**ERIE BOLT CORPORATION and Zurich Insurance Group, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ELDERKIN), Respondents.**

Supreme Court of Pennsylvania.

June 22, 2000.

### ORDER

PER CURIAM.

**AND NOW,** this 22nd day of June, 2000, the Petition for Allowance of Appeal is GRANTED. The order of the Commonwealth Court is reversed based upon the decision in *Davis v. Worker's Compensation Appeal Board (Borough of Swarthmore)*, —— Pa. ——, 751 A.2d 168 (2000).

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carl Arthur DAVIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1999.

Decided June 23, 2000.

Basil G. Rusin, Public Defender, William Ruzzo, Asst. Public Defender, Public Defender's Office, for Carl Davis.

Peter Paul Olszewski, Dist. Atty., Frank P. Barletta, Asst. Dist. Atty., Dist. Attorney's Office, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### ORDER

PER CURIAM:

Appeal dismissed as having been improvidently granted.

Justice NIGRO dissents.

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Shawn ANDERSEN, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 2000.

Filed May 17, 2000.

Kenneth B. Hone, Doylestown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Commonwealth, appellee.

Before POPOVICH, TODD and BROSKY, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Bucks County on August 4, 1999. Appellant was convicted of driving under the influence of alcohol or controlled substance (75 Pa.C.S.A. § 3731(a)(4)(i)), possession of a small quantity of marijuana for only personal use (35 P.S. § 780–113(31)(i)), and driving while operating privilege is suspended or revoked (75 Pa. C.S.A. § 1543(a)). Appellant was ordered to pay a fine of $500 and sentenced to a period of incarceration not less than forty-eight hours nor more than one year. This timely appeal followed. Upon review, we reverse the judgment of sentence and remand for a new trial.

¶ 2 Herein, appellant asks the following:

A. Did the suppression court err when it failed to require the Commonwealth to establish probable cause to justify a traffic stop for a motor vehicle violation?

B. Did the suppression court err when it failed to rule that Article I, § 8 of the Pennsylvania constitution provides greater protections from warrantless searches and as such the police officers' stop of the black Camaro and subsequent obtaining of evidence requires a showing of probable cause before making a traffic stop?

C. Did the suppression court err when it found that the Commonwealth meets its burden where the basis for the stop was suspected driving under suspension and the police did not know who was driving?

Appellant's brief, at 4.

¶ 3 "Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Hamilton*, 543 Pa. 612, 614, 673 A.2d 915, 916 (1996)(citing Pa.R.Crim.P. 323(h)). "In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record." *Id.* Where, as here, the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the Commonwealth and whatever evidence for the defense which is uncontradicted on the record as a whole. *Commonwealth v. Roman*, 714 A.2d 440, 442 (Pa.Super.1998), *appeal denied*, 556 Pa. 707, 729 A.2d 1128 (1998)(quoting *Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa.Super.1997)). "If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous." *Id.* "Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence." *Id.*

¶ 4 After a careful review of the record, we are satisfied that the trial court's factual findings are supported by the record. At approximately 2:00 a.m. on April 7, 1999, Police Officers Steven Hillias and Earl Clark of the Perkasie Borough Police Department, along with other police officers, responded to a police call concerning a disturbance in the vicinity of a local tavern. Upon arriving at this location, the police officers encountered appellant conversing with his girlfriend while he was seated in a black Camaro. The police officers checked the records of the Camaro and learned that the automobile was registered to appellant. Furthermore, the rec-

ord check revealed that the driving privileges of both appellant and his girlfriend were currently suspended.

¶ 5 As this encounter progressed, the police officers arrested appellant's girlfriend for disorderly conduct. Noting the suspension of appellant's driving privileges, the police officers advised appellant not to drive his vehicle. Appellant informed the police officers that he would walk to the nearby residence of his friend and stay there for the night.

¶ 6 Later that day, at approximately 11:00 p.m., Officer Hillias observed appellant's automobile parked unattended in a different location than where appellant had left it during the previous encounter. On April 8, 1999, at approximately 2:30 a.m., Officer Clark communicated to Officer Hillias via radio that he was following the "same ones from last night." Although Officer Hillias understood this reference to mean appellant and appellant's girlfriend, Officer Clark had yet to identify either driver. Officer Hillias proceeded in his marked police car to Officer Clark's location.

¶ 7 Officer Clark had been following a black Camaro and a white Sable. Before the arrival of Officer Hillias, Officer Clark activated his emergency lights in an attempt to stop both vehicles. At his point, Officer Clark had not observed who was driving the Camaro or the Sable. The Camaro pulled over and the Sable continued driving with Officer Clark in pursuit. The record indicates that Officer Clark observed appellant as the driver of the Camaro as he passed appellant's automobile in pursuit of the Sable. However, the record provides no indication that Officer Clark communicated this observation to Officer Hillias. After stopping the Sable, Officer Clark determined the driver to be appellant's girlfriend.

¶ 8 When Officer Hillias arrived, he observed from a distance that Officer Clark's vehicle was stopped by the side of the road with its emergency lights in operation. In addition, Officer Hillias saw a black Camaro bearing the same license plate as appellant's automobile. The Camaro was traveling at a slow rate of speed towards Officer Clark's position. Although Officer Hillias did not observe the driver of the Camaro, he activated the emergency lights of his police car and proceeded to stop the Camaro. Officer Hillias determined that appellant was the driver of the Camaro and detected a strong odor of alcohol emanating from appellant's automobile. Officer Hillias administered several field sobriety tests upon appellant who failed each one. During the course of the sobriety tests, Officer Hillias observed a bulge in appellant's sock that turned out to be a baggie containing 1.09 grams of marijuana. After appellant was arrested he underwent a blood test that revealed a blood alcohol content of 0.16 percent.

¶ 9 Appellant filed a pre-trial motion seeking to suppress all evidence gained as a result of his alleged illegal traffic stop. A suppression hearing was conducted on August 4, 1999, and appellant's motion to suppress was denied. After the denial of appellant's motion to suppress, this matter proceeded to a bench trial.

■ ¶ 10 We begin by addressing appellant's contention that the trial court erred by failing to require the Commonwealth to establish probable cause to justify a stop based upon a violation of the Vehicle Code. We note that confusion had arisen in case law as to whether, in order to stop a vehicle for a traffic violation, a police officer must possess "probable cause to believe" or a "reasonable suspicion to believe" that a violation of the Vehicle Code had occurred. In an effort to end the confusion surrounding this issue, the Pennsylvania Supreme Court recognized that the difference in the two phrases was merely semantic and concluded that police officers may stop a vehicle "whenever they have articulable and reasonable grounds to suspect that a violation of the Vehicle Code had occurred." *Hamilton*, 673 A.2d at 918

(1996)(citing *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995); 75 Pa.C.S. § 6308(b)). Therefore, the trial court applied the correct standard by requiring the Commonwealth to justify the traffic stop by demonstrating that the police had articulable and reasonable grounds to suspect that appellant violated the Vehicle Code.

¶ 11 We now address appellant's challenge to the legality of the traffic stops conducted by Officers Clark and Hillias. "When [a] police [officer] stop[s] a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants, are considered 'seized' and this seizure is subject to constitutional constraints." *Commonwealth v. Bowersox*, 450 Pa.Super. 176, 675 A.2d 718, 720 (1996)(quoting *Commonwealth v. Knotts*, 444 Pa.Super. 60, 663 A.2d 216, 218 (1995)). Here, when Officer Clark and Officer Hillias stopped appellant's vehicle, appellant and his vehicle were clearly "seized." Accordingly, we must determine whether the seizure was justified. Namely, we must determine whether the information available to Officers Clark and Hillias at the time they stopped appellant's vehicle created articulable and reasonable grounds to suspect that a violation of the Vehicle Code had occurred.

¶ 12 In support of the traffic stops, the Commonwealth offers the radio transmission from Officer Clark to Officer Hillias that indicated that Officer Clark was "following the same ones as last night." However, the record reveals that Officer Clark did not actually determine the identity of the drivers until after both vehicles had been pulled over.[1] Likewise, Officer Hillias did not actually know who was driving appellant's vehicle when he stopped it. The Commonwealth further supports the legality of the traffic stops by pointing to the following additional information: 1) Officer Hillias observed that the Camaro he was following possessed the same license plate as appellant's vehicle; 2) the traffic stop occurred on the same street as the tavern near where the police encountered appellant and his girlfriend the day before; 3) Officer Hillias observed appellant's vehicle traveling at a slow rate of speed towards Officer Clark's vehicle.

¶ 13 In reviewing the facts set forth by the Commonwealth, we note that neither Officer Clark nor Officer Hillias specifically observed appellant's vehicle violate the Vehicle Code prior to the traffic stops. In addition, we fail to recognize the significance of the fact that appellant's vehicle was being driven near a location where the police previously had encountered appellant. The only relevant information possessed by Officers Clark and Hillias prior to the traffic stops was that appellant's driving privileges were suspended and that the Camaro registered to appellant was being operated. Thus, both traffic stops were based on the *mere assumption* that appellant was driving the black Camaro.

¶ 14 Although a police officer need not establish that an actual violation of the Vehicle Code has occurred prior to stopping a vehicle, a police officer must provide a reasonable basis for his or her belief that the Vehicle Code was being violated in order to validate the stop. *Bowersox*, 675 A.2d at 721 (citing *Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030 (1995)). "This reasonable basis must be linked with his observation of suspicious or irregular behavior on behalf of the particular ... individuals stopped." *Id.* (quoting *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968, 970 (1987)). "Moreover, the reasonable basis necessary to justify a stop is less stringent than probable cause, but the detaining officer must have more than a mere hunch as the basis for the stop." *Id.* (citing *In Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172, 174 (1993)).

---

1. The trial court observed that the record provides no explanation of what the police officers may have known about the Sable prior to pulling it over.

 ¶ 15 We conclude that the knowledge a vehicle is owned by an individual whose driving privileges are suspended coupled with the *mere assumption* that the owner is driving the vehicle, does not give rise to articulable and reasonable grounds to suspect that a violation of the Vehicle Code is occurring every time this vehicle is operated during the owner's suspension. Therefore, based on the totality of the circumstances, we cannot find that Officers Clark and Hillias had articulable and reasonable grounds to suspect that a violation of the Vehicle Code had occurred. Accordingly, we find that the trial court erred by failing to suppress the evidence gained from the traffic stop conducted by Officer Hillias. *See Commonwealth v. Gibson*, 536 Pa. 123, 131, 638 A.2d 203, 206–207 (1994)(if either a search or a seizure is found to be illegal, the remedy is to exclude all evidence derived from the illegal governmental activity).

¶ 16 Holding otherwise would subject drivers who lawfully operate vehicles owned or previously operated by a person with a suspended license to unnecessary traffic stops. The example of the family car demonstrates this point. Although a family car may be registered in the name of one individual, numerous additional drivers may be licensed and insured to operate the same vehicle. If we allow the police to stop any vehicle for the mere fact that it is owned or once operated by an individual whose operating privileges are suspended, then each additionally insured driver of the family car could be subject to traffic stops while lawfully operating the family car simply because the license of another operator of the vehicle is suspended. The lack of articulable and reasonable grounds to suspect a violation of the Vehicle Code when such a stop occurs without knowing the identity of the driver is patent.

¶ 17 For the foregoing reasons, we reverse the judgment of sentence and remand for a new trial.

¶ 18 Judgment of sentence reversed. Remanded for new trial. Jurisdiction relinquished.