J-S23012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAN SULLIVAN | : | No. 2380 EDA 2023 |

Appeal from the Order Entered August 28, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000975-2023

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 25, 2024**

The Commonwealth of Pennsylvania appeals from the August 28, 2023,

order granting Appellee Brian Sullivan's motion to suppress evidence. Upon

review, we reverse and remand.

The trial court summarized the facts adduced at the suppression hearing

as follows:

> Philadelphia Police Officer Dave Dohan (hereinafter "Officer
> Dohan") testified at the suppression hearing. Officer Dohan
> indicated on December 8, 2022, at about 7:30pm, he encountered
> a black Dodge Durango being operated in the area of Stenton
> Avenue and Johnson Street of Philadelphia, PA. Upon initial
> observation, the Officer noted only "just that it was occupied; two
> occupants … one driver, one passenger." Officer Dohan further
> testified a Bureau of Motor Vehicles (BMV) check of the license
> plate was run that revealed the registered owner of the Durango
> had a suspended license and the vehicle registration expired at
> the end of November.

_____

[*] Retired Senior Judge assigned to the Superior Court.

When the police vehicle's lights and sirens were activated to effectuate the stop, the Durango initially pulled over, but then drove away within seconds. A car chase ensued, and while Officer Dohan called for backup over police radio, he lost sight of the vehicle. Eventually, he encountered the Durango again, stopped by plain clothes police units, when Appellee exited the passenger side door and fled on foot. Officer Dohan joined the pedestrian chase but did not catch up with Appellee until the other officers had him in custody.

Officer Raheem Williams testified that he was working in plain clothes on the night of the incident when he responded as backup to a call regarding a Black Dodge Durango. The Durango collided with his unmarked police vehicle and Appellee exited from the passenger side, then fled on foot. Officer Williams chased Appellee and testified: "I could see that he had … something in his hand that was flashing in his hand as he's running … on the sidewalk I got close to him where I could almost grab him … I realized he had a gun with a flashlight flashing on." The Officer saw Appellee toss the gun, which hit a fence and fell to the ground. Appellee was subsequently apprehended, and the gun was recovered with the flashlight still flashing on it.

Suppression Court Opinion, 10/20/23, at 2-3 (footnote and citations to record omitted). Appellant challenged the legality of the traffic stop in an omnibus motion that sought, *inter alia*, to suppress physical evidence seized where the only basis for the stop was information possessed by the police that the owner of the vehicle had a suspended license. **See** Omnibus Pretrial Motion, 3/13/23[1]; N.T., Suppression Hearing 8/28/23, at 6.

_____

[1] It is not entirely clear from a review of Appellant's Omnibus Pretrial Motion that Appellant was challenging the legality of the initial traffic stop. Regardless, at a hearing, counsel stated for the record that the basis for suppression was that the stop was illegal based upon the officers only possessing information that the owner of the vehicle had a suspended license. N.T., 8/28/23, at 6.

After a hearing, the court granted Appellee's motion and suppressed all evidence as fruit of the poisonous tree. N.T., Suppression, at 66. Despite the Commonwealth presenting officer testimony at the suppression hearing that the basis for the stop was that the owner had a suspended license, and that the vehicle was not registered, the suppression court did not find the entirety of this testimony to be credible. *Id.* The suppression court found that the only basis for the stop was that the owner had a suspended license. *Id.* This timely interlocutory appeal followed.[2]

On appeal, the Commonwealth raises a sole issue for our review: "Did the lower court err by suppressing evidence where police lawfully stopped a car for investigation after determining that the owner of the vehicle had a suspended license?" Commonwealth's Brief at 3.

When faced with a challenge to the grant of a suppression motion, our standard of review is well-settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

---

[2] The Commonwealth certified that the August 28, 2023, order granting Appellee's motion to suppress will terminate or substantially handicap the prosecution in accordance with Pa.R.A.P. 311(d).

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa. Super. 2016), *appeal denied*, 159 A.3d 933 (Pa. 2016) (citation omitted).

After having his memory refreshed by the Commonwealth using BMV information, Officer Dohan testified at the suppression hearing that the reason he effectuated the car stop was "the registered owner had a suspended license and . . . the registration *had expired* at the end of November." N.T., Suppression, at 9 (emphasis added). Other documents entered into evidence indicated the stop was based only upon the owner having a suspended license. After "carefully" weighing the testimony of Officer Dohan, the suppression court determined that the true basis for the car stop was the suspended license of the registered owner of the vehicle, and not that the stop was based upon both a suspended license *and* an expired vehicle registration.

The suppression court found it odd that the "response information" provided for the witness to review and subsequently submitted into evidence failed to reflect the actual date of the incident (12/08/22), but instead, at the top of each page reflected a date of December 27, 2022, some 18 days later. Trial Court Opinion, 10/20/23, at 5. As a result, the suppression court found that "Officer Dohan was without a legitimate reason at the time of the questioned stop, which would provide probable cause to believe the vehicle or driver was in violation of the vehicle code." *Id.* at 7.

In reaching its decision, the suppression court in its opinion[3] relied on this Court's decision in **Commonwealth v. Andersen**, 753 A.2d 1289 (Pa. Super. 2000). In **Andersen** *w*e concluded

> that the knowledge a vehicle is owned by an individual whose driving privileges are suspended coupled with the **mere assumption** that the owner is driving the vehicle, does not give rise to articulable and reasonable grounds to suspect that a violation of the Vehicle Code is occurring every time this vehicle is operated during the owner's suspension.

**Id.** at 1294 (emphasis in the original). Unfortunately, our decision in **Andersen** no longer is good law.

In **Kansas v. Glover**, 589 U.S. 376 (2020), the Supreme Court of the United States reviewed "whether a police officer violates the Fourth Amendment by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license." **Id.** at 378. The Supreme Court held "that when the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable." **Id.** However, the presence of additional facts might negate the officer's reasonable suspicion:

> For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not

---

[3] At the hearing, the suppression court referenced both **Andersen** and **Commonwealth v. Jefferson**, 256 A.3d 1242 (Pa. Super. 2021), as legal authority to grant suppression. N.T., Suppression, at 64. As explained, *infra*, **Jefferson** held that **Andersen** has been overruled by **Kansas v. Glover**, 589 U.S. 376, 378 (2020).

raise a suspicion that the particular individual being stopped is engaged in wrongdoing.

*Id.* at 386 (citation and quotation marks omitted).

Thereafter, this Court, sitting *en banc*, applied **Glover** in **Commonwealth v. Jefferson**, 256 A.3d 1242 (Pa. Super. 2021). There, officers on routine patrol ran the license plates of various vehicles and determined that the registered owner of one of the vehicles had an open warrant. *Id.* at 1245. While the officers were attempting to validate the warrant, the vehicle pulled over, and the officers pulled behind it and activated a spotlight. *Id.* at 1245-46. The purpose of the stop was for officers "to identify the driver and to investigate whether he was the registered owner of the vehicle, and thus the person for whom there was an arrest warrant." *Id.* at 1246.

This Court concluded that the defendant's Fourth Amendment challenge to the legality of the traffic stop failed under **Glover**. *See id.* at 1248-51. We noted that there were no additional factors to negate the officer's reasonable suspicion that the owner of the vehicle was also the driver of the vehicle. *Id.* at 1250. After extensive analysis, we also concluded that **Glover** is consistent with Article I, Section 8 of the Pennsylvania Constitution, and that Article I, Section 8 does not provide greater protection than the Fourth Amendment standard established in **Glover**. *See id.* at 1251-1260.

Of importance, we noted,

**Andersen** specifically raised the question of whether Section 8 provided greater protection than the Fourth Amendment. However, the **Andersen** Court never reached that specific claim.

- 6 -

> As it granted relief under the Fourth Amendment, it was unnecessary for the Court to consider whether greater protection existed under the Pennsylvania Constitution. As ***Andersen*** can only be understood to reflect this Court's interpretation of Fourth Amendment standards, **we must conclude that [*Andersen*] has been overruled by *Glover***, and provides no support for the notion that Section 8 provides greater protection than the Fourth Amendment in these circumstances.

***Jefferson,*** 256 A.3d at 1255 (emphasis added). Thus, ***Andersen*** no longer is good law, and the suppression court's reliance on it was in error.

Here, Officer Dohan conducted a traffic stop based on information obtained during a BMV records check that the registered owner of the vehicle had a suspended license. There was no additional information to negate the inference that the registered owner of the vehicle was the driver of the vehicle. ***See Glover***, ***Salter***, ***supra.*** Officer Dohan had reasonable suspicion to conduct a traffic stop to determine whether the registered owner who had a suspended license was the person driving the vehicle. Accordingly, we conclude the court's suppression of evidence based upon its reliance on ***Andersen*** was an error of law. We therefore reverse the order of the suppression court and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

- 7 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/25/2024